CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

3/21/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| WILLIAM DAVID HATCHER,<br><br>         *Plaintiff*,<br><br>v.<br><br>HIGGINS ELECTRIC, INC. OF DOTHAN<br>AND JAMES HAGANS,<br><br>         *Defendants*. | CASE NO. 6:21-cv-00020<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  William David Hatcher filed suit against Higgins Electric, Inc. and its employee, James Hagans, for injuries sustained while working for Smith's Inc. of Dothan on renovations of a Flowers Foods brand plant in Lynchburg. Dkt. 1 at ¶ 11. Hatcher asserts that 28 U.S.C. § 1332 gives this Court subject matter jurisdiction over his state law tort claim based on diversity of citizenship. *Id* at ¶ 4.

  Defendants have filed a motion challenging jurisdiction.[1] Dkt. 23. Specifically, Defendants argue that the Virginia Workers' Compensation Act provides the exclusive remedy

---

[1] By unpublished opinion the Fourth Circuit held Rule 12(b)(1) to be an appropriate vehicle for motions raising the issue of whether a plaintiff's tort claim has been abrogated by the Virginia Workers' Compensation Act. *See Banks v. Virginia Elec. & Power Co.*, 205 F.3d 1332, *2 (4th Cir. 2000). The Court will follow that holding today because the undisputed facts in this case dictate identical outcomes, whether the motion is considered as one brought under 12(b)(1) or 12(b)(6). However, the Court notes with sympathy the concern raised by then-Chief Judge Wilson that "[i]f the court were to consider the Virginia Workers' Compensation Bar as a jurisdictional question, then the Virginia General Assembly would effectively determine the limits of federal jurisdiction. Federal jurisdiction is limited by the United States Constitution and by Congress, not by state legislatures." *Graves v. Cook*, No. 7:01-cv-00533, 2002 WL 598416, at *1 n. 1 (W.D. Va. Apr. 17, 2002) (unpublished).

for Plaintiff's claim because Plaintiff is their fellow statutory employee. *See* Dkt. 24. The Court ordered limited jurisdictional discovery on the facts relevant to that determination. Dkts. 48, 55. Having reviewed the parties' discovery materials and supplemental briefing, the Court concludes that Plaintiff and Defendants are not fellow statutory employees, and Plaintiff's claim is thus not precluded by the Act. Defendants' motion will be denied.

**I**

"The issue whether a person is a statutory employee presents a mixed question of law and fact which must be resolved in light of the facts and circumstances of each case." *Cooke v. Skyline Swannanoa, Inc.*, 307 S.E.2d 246, 247 (Va. 1983). The plaintiff bears the burden of proving jurisdictional facts by a preponderance of the evidence. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (2009). The trial judge may serve as the factfinder so long as the necessary factual inquiry is not "intertwined with the facts central to the merits of the dispute[.]" *Id*. at 348. (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). And he or she may do so "considering evidence outside the pleadings, such as affidavits." *Id*. at 348.

The Court will make the necessary factual findings to resolve this motion. As elaborated below, resolving the question of whether the parties are fellow statutory employees, and thus limited to an action before Virginia's worker's compensation tribunal, involves assessing the nature of the businesses involved, as well as the relationship between them. The proof required to establish the substantive elements of Plaintiff's common law negligence claim is entirely collateral to these questions. *See Jadhav*, 555 F.3d at 349 (finding jurisdictional factfinding by trial judge appropriate where "[a] direct comparison of the nature of the jurisdictional issues with

the factual issues central to the merits of" plaintiff's claim "dispels any notion of such intertwining").

## II

On the key jurisdictional facts, the parties agree. The disagreement centers instead on whether those facts render the parties fellow statutory employees within the meaning of the Virginia Workers' Compensation Act. The facts are as follows.

"Flowers Foods" is the brand name for a collection of companies that manufacture bread and baked goods. Dkt. 50, Ex. C (Deposition of Billy Larry Brewer, Vice President of Engineering and Maintenance for Flowers Bakeries, LLC) ("Brewer Deposition") 38:14–39:19. Flowers Foods, Inc. serves as the brand's executive branch. *Id*. at 12:18–24. Under it are several wholly owned subsidiaries, including Lynchburg Organic Baking Co., LLC and Flowers Bakeries, LLC. Dkt. 56 ("Agreed Stipulation") ¶¶ 1–7.[2]

Lynchburg Organic Baking Company owns the facility in Lynchburg where Plaintiff's accident took place. *See* Brewer Deposition 14:23–25. Flowers Bakeries, LLC exists to support associated baking facilities like that in Lynchburg, including through sales and marketing, *id*. at 17:25–18:3, as well as maintenance and bakery renovation, *id*. at 11:17–12:3, 14:12–15:15. Accordingly, when it came time to renovate the Lynchburg facility, Flowers Bakeries, LLC was responsible for pulling "together a group of vendors, a group of suppliers, get[ting] a budget pulled together with a timeline, and then proceed[ing] from there." *Id*. at 16:6–9. Including by

---

[2] More precisely, Lynchburg Organic Baking Co., LLC is a wholly-owned subsidiary of DKB Organic Bakeries, LLC, which is a wholly-owned subsidiary of Flowers Bakeries, LLC, which is a wholly-owned subsidiary of Flowers Foods, Inc. Agreed Stipulation ¶¶ 1–7.

securing contracts with Defendant Higgins Electric and Smith's, Inc. of Dothan, the company for which Plaintiff worked. *See id.* at 19:22–20:1, 20:12–18, 21:13–20.

Flowers Bakeries, LLC's employees were then responsible to "oversee on [Flowers Bakeries, LLC's] behalf the entire day-to-day projects and make sure timelines are met. Making sure budgets are met. Coordinating any activity with the contractors and/or suppliers." Brewer Deposition 25:10–15. Finally, on the back end, it was Flowers Bakeries, LLC that issued payments to the contractors working on the Lynchburg facility. *Id.* at 39:22–41:23, 54:14–25, 60:18–24, 81:14–24.[3]

Flowers Bakeries, LLC has never been licensed as a general contractor, either in the state of Virginia or any other state. *Id.* at 49:2–12. And while Flowers Bakeries, LLC holds a supporting role that includes facilitation and supervision of maintenance and construction projects, its employees do not perceive it or any other Flowers Foods brand company as being in the construction business. *Id.* at 51:5–10. Rather, "they're all in it to make and sell bread." *Id.* at 58:9–10.

---

[3] Brewer testified that another company, Register Construction & Engineering, Inc., was contacted to "be the general manager over the general contractor over" a specific aspect of the renovation. *Id.* at 20:3–11. It is not clear what this means. However, Brewer, Higgins, and Smith's have insisted that neither Higgins nor Smith's were subcontractors of Register. *Id.* at 71:13–23. They reported to Flowers Bakeries, LLC. *Id.* at 25:20–24. Nor do Defendants claim statutory fellow employee status based on Register's status as general contractor.

### III

### A

The Virginia Workers' Compensation Act abrogated injured workers' common law right to sue in tort for negligence and substituted a no-fault liability cause of action that could be vindicated before the state's Workers' Compensation Commission. *Jeffreys v. Uninsured Employer's Fund*, 823 S.E.2d 476, 482 (Va. 2019).

But the abrogation is not complete. "The Workers' Compensation Act requires an employment relationship of some kind to exist between a claimant and the party allegedly liable for compensation." *Id*. at 480. Besides the "usual scenario" in which the injured employee is suing his direct employer, the Act specifies three covered "statutory employer" relationships. *Id*. These scenarios are found in Va. Code § 65.2-302(A)–(C). The first section states conditions under which a person who hires an independent contractor becomes liable to the independent contractor's employees:

> A. When any person (referred to in this section as "owner") undertakes to perform or execute any work which is part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if the worker had been immediately employed by him.

Va. Code § 65.2-302(A). The second section states the conditions under which a general contractor becomes liable to the employee of a subcontractor:

> B. When any person (referred to in this section as "contractor") contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under the subcontractor of the

> whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any worker employed in the work any compensation under this title which he would have been liable to pay if that worker had been immediately employed by him.

Va. Code § 65.2-302(B). And the third section states the conditions under which an owner or general contractor becomes liable to the employee of a secondary subcontractor:

> C. When the subcontractor in turn contracts with still another person (also referred to as "subcontractor") for the performance or execution by or under such last subcontractor of the whole or any part of the work undertaken by the first subcontractor, then the liability of the owner or contractor shall be the same as the liability imposed by subsections A and B of this section.

Va. Code § 65.2-303(C).

Taken together, these provisions exclude from liability under the Workers' Compensation Act persons, other than general contractors, who contract-out work they would not ordinarily perform, while preserving liability for others. *See Smith v. Horn*, 351 S.E.2d 14, 16 (Va. 1986). Section A makes a person the statutory employer of an independent contractor's employees when that person contracts with the independent contractor to outsource his own unique "trade, business, or occupation." To determine whether this section applies, Virginia courts often utilize what has become known as the normal-work test, asking whether the independent contractor is engaged for work "*normally* carried on through employees rather than independent contractors." *Shell Oil Co. v. Leftwhich*, 187 S.E.2d 162, 167 (Va. 1972) (emphasis original) (citation omitted). "[F]or example, when a roofing company hires an independent contractor to repair a roof." *Jeffreys*, 823 S.E.2d at 480. However, this test is "only a corollary guide, sometimes useful but not indispensable, in applying the literal language of the statute to the facts in a particular case." *Cinnamon v. International Business Machines Corp.*, 384 S.E.2d 618, 621 (Va. 1989).

Section B makes a general contractor the statutory employer of subcontractors where the contractor was hired by a person to do work *outside* the scope of that person's "trade, business or occupation." By implication, the person who hires the general contractor in this scenario is *not* the statutory employer of the general contractor, the subcontractor, or their employees. To determine whether this section applies, Virginia courts utilize the subcontracted-fraction test, asking whether "the work out of which the accident arose was, in the language of *Shell Oil*, 'obviously a subcontracted fraction of [the contract between the owner and the general contractor] and, in the language of the statute, 'not a part of the trade, business or occupation of' the owner[.]" *Cinnamon*, 384 S.E.2d at 620 (quoting *Shell Oil*, 187 S.E.2d at 167).

> An example of this scenario would be where a banker—whose business is banking rather than construction—enters into a contract with a general contractor to build a home, and the general contractor in turn relies on subcontractors (e.g., firms employing framers, brick masons, electricians, etc.) to complete the job. The general contractor, not the banker, becomes the statutory employer of the subcontractors' employees.

*Jeffreys*, 823 S.E.2d at 481. Finally, "Subsection C extends the reach of subsections A and B to cover situations where the first covered subcontractor hires his own subcontractors." *Id*. at 481 n. 3.

Emphasizing that the Act's coverage is limited to these scenarios, the statute goes on to provide that "nothing in [the Act] shall be construed to make the employees of any independent contractor the employees of the person or corporation employing or contracting with such independent contractor." Va. Code § 65.2-101. "Consequently, the mere fact a business owner engages an independent contractor does not make that independent contractor's employees statutory employees of the owner." *Jeffreys*, 823 S.E.2d at 481 (internal citation omitted).

Where an employer or statutory employer relationship exists, the Act, being the exclusive remedy for those within its coverage, is also understood to bar common-law actions between fellow statutory employees. *Pfeifer v. Krauss Const. Co. of Virginia, Inc.*, 546 S.E.2d 262, 266 (Va. 2001) ("If a particular subcontractor and an injured employee's common law or statutory employer are both working on the same project and are also engaged in the owner's or general contractor's work, that particular subcontractor, as a statutory co-employee of the injured worker, is also entitled to the common law immunity provided by the exclusivity provision.").[4]

### B

We are not presented here with the "usual scenario" in which the injured employee is suing his direct employer. Plaintiff is not an employee of either Higgins or Hagans. And Virginia law precludes any argument that Plaintiff should be treated as the employee of Flowers Bakeries, LLC. *See* Va. Code 65.2-101 ("[N]othing in this title shall be construed to make the employees of any independent contractor the employees of the person or corporation employing or contracting with such independent contractor.")

Furthermore, Subsection A is clearly inapplicable, as construction is not part of the "trade, business, or occupation" of any Flowers Foods brand company. The Flowers Foods

---

[4] Of course, even where it applies, the exclusivity provision does not extend beyond "the field of the particular business" to "accidents caused by strangers to the business." *Feitig v. Chalkley*, 38 S.E.2d 73, 75 (Va. 1946). *See also David White Crane Service v. Howell*, 714 S.E.2d 572, 575 (Va. 2011) ("The injured employee may have a common-law action against a third-party tortfeasor for accidental injuries sustained while working for his employer, but only if the third-party tortfeasor is a 'stranger to the work.'"). The "stranger to the work" test cited by the parties comes into play where the exclusivity provision has been triggered as to some potential defendants but is urged by the plaintiff not to cover others. *See e.g.*, *Pfeifer v. Krauss Const. Co. of Virginia, Inc.*, 546 S.E.2d 717 (Va. 2001). This scenario is explicitly contemplated by the Act, *see* Va. Code 65.2-309(A), but the issue is not presented by this case.

corporate group is in the business of baking bread. Not construction. "As a general rule, the several trades involved in construction work are not part of the business of manufacturing products for sale." *Cinnamon*, 384 S.E.2d at 621. *See also Stone v. Door-Man Mfg. Co.*, 537 S.E.2d 305, 308 (Va. 2000) ("Every manufacturer must have a plant, but this fact alone does not make the work of constructing a plant a part of the trade or business of every manufacturer who engages a contractor to construct a plant.") (quoting *Raines v. Gould, Inc.*, 343 S.E.2d 655, 659 (Va. Ct. App. 1986)).

This rule continues to apply even where the manufacturer plays a significant and supervisory role in the construction of its facilities. In *Stone*, an employee of Ford Motor Company brought a personal injury action against subcontractors involved in a construction project at a Ford plant. The subcontractors argued that they were engaged in the "trade, business, or occupation of Ford," and so were statutory employees of Ford and covered by the exclusivity provision of the Virginia Workers' Compensation Act, because of Ford's extensive involvement in, and supervision over, the project they were working on. *Id*. The Supreme Court of Virginia found the facts insufficient to render Ford the statutory employer of the subcontractors, reasoning that "[a]lthough Ford engaged in a protracted period of intensive planning for the construction project and exercised a degree of supervision in the course of construction, this is not atypical conduct for an owner[.]" *Id*. at 311. The key question was the nature of Ford's business. Applying the normal-work test, the Court stated that because "Ford's normal work indisputably did not include in-house performance of projects of the scope and size" of that for which outside contractors were hired, the project could not be considered the normal work of Ford. *Id*. at 312.

Similarly, in *Cinnamon*, International Business Machines Corp. ("IBM") engaged a general contractor to construct a building for use in the conduct of its business. 384 S.E.2d at

– 9 –

618. But "[a]s conditions to the contract, IBM reserved to its real estate and construction divisions" various rights of control and oversight over the general contractor. *Id*. Urging an exception to the "general rule" that "the several trades involved in construction work are not part of the business of manufacturing products for sale," IBM argued that "construction projects should be recognized as part of [its] business operations for purposes of the Workers' Compensation Act" because it reserved to its own employees "authority to prepare plans and specifications, to approve subcontract awards, to issue change orders, and to monitor the progress of construction." *Id*. at 621–22. The Supreme Court of Virginia disagreed:

> We decline to adopt the rule IBM urges. In awarding construction contracts, business owners usually reserve to a discrete group of their employees authority to oversee the performance of those contracts. **If the owner is incorporated, such authority may be assigned to a group formally organized as a construction division.** The existence of any such group, vested with such authority, is immaterial to the resolution of a statutory-employer question unless the owner has utilized that group to perform its own construction work as part of the conduct of its business operation.

*Id*. at 622 (emphasis added).

This is exactly the situation presented. Flowers Bakeries, LLC's employees hired, paid, and exercised regular, daily oversight over the subcontractors involved in this case. That was its role in the Flower Foods brand corporate group. But there is no evidence that any Flowers Foods brand employee could or did the same work Higgins and Smith's were hired to do. As in *Ford* and *Cinnamon*, the owner's involvement in the work of its subcontractors does not make such work the "trade, business, or occupation" of the owner.

Defendants instead rely on Subsection B, arguing that Flowers Bakeries, LLC was a general contractor and Higgins and Smith's both subcontractors responsible for a fraction of the general contract.

The problem is that there was no general contract. *See* Va. Code § 65.2-302(B) ("When any person . . . *contracts* . . . .") (emphasis added). The parties agree that Flowers Bakeries, LLC was not retained by any entity as a general contractor. Defendants' argument that Flowers Bakeries, LLC "performed the accepted duties of a general contractor", Dkt. 54 (Defendant's Reply Brief) at 3, could equally be said of Ford and IBM in the cases cited above. And the *Cinnamon* decision foreclosed the possibility that a different outcome should result because the supervisor was a separate (albeit wholly owned) corporate entity, rather than an internal division, of the owner's. *Cinnamon* explicitly accounted for the possibility that an owner might be incorporated, and authority to supervise construction projects "assigned to a group formally organized as a construction division." 384 S.E.2d at 622. Unless such division performs the same work as that for which the independent contractor was hired, its existence is "immaterial to the resolution of a statutory-employer question[.]" *Id*.

## IV

The Virginia Workers' Compensation Act does not bar an injured employee of one contractor from proceeding in a common law action against another contractor where the two contractors do not share a general contractor and are not engaged in a part of the trade, business, or occupation of the owner. Because that is the situation here, Defendants' motion to dismiss will be denied.

Defendant Hagans separately filed a motion to strike certain exhibits filed in support of Defendants' motion to dismiss, Dkt. 32. Because those exhibits were immaterial to the Court's consideration, the motion to strike will be terminated as moot.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

ENTERED this __21st__ day of March 2022.

*[Signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

– 12 –